UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DIVISION

IN RE:

SVYATOSLAV MANGUSHEV,

        *Debtor.*

Case No.: 25-19761-LMI

Chapter 7

_____/

**CREDITOR IGOR ZORIN'S MOTION FOR ENTITLEMENT TO ATTORNEY'S FEES PURSUANT TO THIS COURT'S ORDER ON CREDITOR'S MOTION FOR ORDER TO SHOW CAUSE (ECF NO. 279)**

Creditor, IGOR ZORIN, by and through counsel, pursuant to this Court's January 15, 2026, Order on Creditor's Motion for Order to Show Cause (ECF No. 279) and its inherent powers, hereby requests that this Court grant entitlement to attorneys' fees incurred in connection with obtaining the Debtor's compliance with the Court's Orders Compelling Turnover and Order to Show Cause (ECF No. 187, 254, 279), which still remain non-compliant, and in support thereof, states as follows:

**Introduction and Procedural History**

Based on the Debtor's responses to Creditor's Rule 2004 requests and his sworn testimony during his Rule 2004 examination on January 6, 2026, there can be little doubt that the Debtor advanced evasive (if not outright false) responses to Creditor's requests for information, concealed the existence of databases of information and assets, acted vexatiously, delayed and disrupted Creditor's discovery efforts, and has taken actions in this case solely for dilatory and improper purposes. As of the filing of this Motion, Debtor has still not provided Bates Number references respective to each of Creditor's requests, and instead, has produced hundreds of pages of completely irrelevant and/or

_____
WOLFF LAW, P.A. – 801 N. Federal Highway, Suite 212 – Hallandale Beach, FL 33009
Ph. (941) 284-5686- davidewolfflaw.com

1

duplicated documents. Debtor still remains non-compliant despite his recent "Amended Sworn Response" filed January 28, 2026 (ECF 290) that not only contradicts his prior responses, but still does not contain Bates Number references. Consequently, consistent with this Court's Order on Creditor's Motion for Order to Show Cause (ECF No. 279), this Court should find that the actions by the Debtor were in bad faith and find that Creditor is entitled to its attorney's fees and costs associated with Debtor's non-compliance with the Court's Orders Compelling Turnover and Rule 2004 Examination Requests.

### Debtor's Torrent and Barrage of Emails and Miscellaneous Attachments and Repeated Objections and Protective Orders to Rule 2004 Examination

1. From November 3, 2025, to present, in attempting to obtain proper responses and documents to Creditor's Rule 2004 Examination Document Requests and schedule Debtor's Rule 2004 Examination, the *pro se* Debtor sent undersigned counsel no less than 37 emails and over 42 attachments, all of which were either argumentative or non-compliant with the Court's orders.[1]

2. Undersigned counsel was also required to litigate, attend hearings, and obtain rulings on Debtor's Emergency Objection to Rule 2004 examination (ECF 102, 159); Creditor's Motion to Compel Turnover of Documents (ECF 94, 187) Debtor's Emergency Motion for Protective Order (ECF 189, 196); Debtor's Emergency Motion to Reconsider (ECF 198, 254); and Creditor's Motion for Order to Show Cause (ECF 265, 279) as a result of Debtor's plethora of improper objections, constant rescheduling and

---

[1] These numbers exclude all of the *pro se* Debtor's torrent of Motions for Sanctions, Disqualification, improper subpoenas, etc. (all of which have been denied by this Court) and emails and attachments relating thereto.

2

WOLFF LAW, P.A. – 801 N. Federal Highway, Suite 212 – Hallandale Beach, FL 33009
Ph. (941) 284-5686- davidewolfflaw.com

dilatory tactics, and failures to produce responsive documents or answer Creditor's requests in an intelligible manner.

3. Following the Court's January 6, 2026, hearing on Creditor's Motion for Order to Show Cause, at 1:43 PM, Creditor commenced the Rule 2004 Examination of Debtor with Trustee's counsel present.

**Debtor's False Statements Regarding the "Sale" of Debtor's Vehicles**

4. During the Rule 2004 examination of the Debtor, it was revealed that Debtor's sworn statement that the six (6) luxury vehicles he listed were "sold" was false, and that the Debtor was still driving these Mercedes and Range Rover vehicles within the past month, and in fact, they were now under the ownership of a company owned by his wife.[2]

5. As it stands, in response to Creditor's Rule 2004 requests the Debtor has still not identified the name of the company owned by his wife that owns the vehicles, the registrations for the vehicles, when they were transferred or registered to his wife's company, or any other insurance information associated with these vehicles despite the Court's clear orders and multiple conferrals with the Debtor.

**The Never Disclosed Apple Laptop and Cloud Account Containing Debtor's Records**

6. When questioned about where records were located that the Debtor stated he needed in order to answer many of Creditor's questions during the Rule 2004 examination, the Debtor revealed for the first time (as it was also not disclosed on his

---

[2] **Exhibit "A,"** Transcript of Rule 2004 Examination of Debtor, pages 75-84.

schedules) the existence of a MacBook and cloud account containing records not only responsive to Creditor's Requests, but the Trustee's requests as well.[3]

### Debtor's Undisclosed Watches

7. The Debtor also admitted during his Rule 2004 examination that he was in possession of several watches he never disclosed on his schedules or in response to Creditor's Rule 2004 Examination Requests.[4]

### The Debtor Confirmed Signatory Authority for Multiple Bank Accounts Never Disclosed

8. The Debtor further admitted during his Rule 2004 examination that he served as signatory for the bank accounts of the following entities from 2018-2024 that were never disclosed in his responses:[5]

    a. Mangushev Irrevocable Trust;

    b. 1200 Federal LLC;

    c. Biscayne LLC;

    d. Limar LLC;

    e. Imperial LLC;

    f. Sky Synergy, LLC;

    g. Trump Palace 5102, LLC.

### Further Documents and Bank Statements Produced by Debtor Following the Rule 2004 Examination

9. On January 7, 2026, the Debtor began producing – once again via loose separate attachment in individual email – more bank statements that were never disclosed in any of his previous responses. The Debtor did not indicate when he gained access to

---

[3] **Exhibit "A,"** Transcript of Rule 2004 Examination of Debtor, pages 63, 95.
[4] **Exhibit "A,"** Transcript of Rule 2004 Examination of Debtor, pages 85-86.
[5] **Exhibit "A,"** Transcript of Rule 2004 Examination of Debtor, pages 36-43.

these documents, or why they were not previously provided in advance of the Rule 2004 examination, and did not produce them in the organized manner required by the Court.

### Creditor was Forced to Reschedule and Re-Notice the Rule 2004 Examination 4 Times and the Responses Remain Non-Compliant

10.    As a result of the Debtor's plethora of objections, protective orders, motions, loose attachments, and last minute cancellations, Creditor was required to reschedule the Rule 2004 examination four (4) separate times and incur unnecessary fees in so doing.  The Rule 2004 examination is still not complete based on the Debtor's continued non-compliance.  More specifically, Debtor still has not provided responses that reference specific Bates Numbers, Debtor continues to send loose attachments to counsel with no discernible order or sequence, and has produced hundreds of pages of irrelevant or duplicated documents as set forth in the attached exhibit.[6]

### BASIS FOR ATTORNEY'S FEES

11.    A bankruptcy court's power to control the conduct of parties before it, including the determination that a party should be sanctioned for contemptuous conduct, is based both in statute allowing bankruptcy courts to enter orders necessary or appropriate to carry out provisions of the Bankruptcy Code and in the inherent power of the federal courts. *In re Kozich*, 406 B.R. 949 (Bankr. S.D. Fla. 2009); 11 U.S.C. § 105(a).

12.    Sanctions under the court's inherent powers can be assessed when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, has delayed or disrupted litigation, or has taken actions in the litigation for an improper purpose. *In re Little Rest Twelve, Inc*., 11-31773-AJC, 2015 WL 1318912, at *2 (Bankr. S.D. Fla. Mar.

---

[6] **Exhibit "B."**

16, 2015).  A federal court's inherent authority to sanction includes pre-filing restrictions such as enjoining future filings without leave of court and the imposition of monetary sanctions.  *Id.; In re Soler*, 22-10746-RAM, 2022 WL 1077991, at *2 (Bankr. S.D. Fla. Apr. 8, 2022).

13. Sanctions under the Court's inherent authority require a finding of bad faith. *In re Mroz*, 65 F.3d at 1575; *see also In re Golan*, No. 19-10339-BKC-MAM, 2020 WL 933271, at *4 (Bankr. S.D. Fla. Feb. 19, 2020).

14. However, even where a bankruptcy court does conclude that a party engaged in bad faith, § 105(a) "is, on its face, a discretionary tool for the courts." *In re Adell*, 296 F. App'x 837, 839 (11th Cir. 2008).

15. Here, this Court should find that the Debtor has indeed acted in bad faith, and unnecessarily delayed and disrupted the proceedings to the prejudice of Creditor by continuing to serve evasive responses, producing duplicative and irrelevant documents, providing unintelligible numbering and sequence, and providing outright false responses based on his Rule 2004 examination testimony, for no other purpose to frustrate his Creditors and drive up costs.

16. The Debtor, Svyatoslav Mangushev, has already been sanctioned *numerous times* by multiple state courts without any effect for the same behavior and conduct, which should be taken into account in determining whether further monetary sanctions are appropriate.

17. While conduct in another forum may not be sanctionable by the Court, the Court may look to such conduct, where relevant, as evidence in determining whether conduct properly before the Court is sanctionable. *In re Lawrence*, No. 97-14687-BKC-

AJC, 2000 WL 33950028, at *5 & n. 8 (Bankr. S.D. Fla. June 2, 2000) (holding that trustee could not seek sanctions for conduct during appeal in different forum, but that such conduct was relevant evidence to document issue of "course of bad faith conduct" before the court) citing Fed. R. Evid. 401.

18.  Consequently, Creditor requests the Court grant its attorneys' fees incurred as set forth in the attached invoice statement.[7]

### Certification

19.  Pursuant to Local Rules, undersigned counsel certifies that he conferred with Debtor several times and his paralegal, Mark Melster, from January 26th to January 29th and advised of the intent to seek reimbursement of attorney's fees and costs incurred as a result of this conduct and repeated non-compliance, but could not reach an agreement and the issues remain unresolved. Undersigned counsel will continue good-faith efforts to resolve the matter subject of this Motion prior to any scheduled hearing

**WHEREFORE,** Creditor, IGOR ZORIN, respectfully requests that this Court <u>GRANT</u> sanctions in the form of attorney's fees against the Debtor, including attorney's fees associated with preparing and litigating the instant motion.

**<u>WOLFF LAW, P.A.</u>**
801 N. Federal Highway, Suite 212
Hallandale Beach, Florida 33009
Telephone: (941) 284-5686
E-Mail: davidewolfflaw@gmail.com
servicedavidewolfflaw@gmail.com
By:/s/ David E. Wolff
   **David E. Wolff, Esq.**
   Florida Bar No. 105653

---

[7] **Exhibit "C."**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was that a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case on January 29, 2026.

By: /s/ David E. Wolff
**David E. Wolff, Esq.**